IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MARY KRISTINE CARPENTER,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0109

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.   INTRODUCTION ................................... 2

II.  PRINCIPLES OF REVIEW ............................ 2

III. FACTS .......................................... 4
     A.  Carpenter's Education and Employment Background ........... 4
     B.  Vocational Expert's Testimony from the Administrative Hearing .... 4
     C.  Carpenter's Medical History ........................ 5

IV.  CONCLUSIONS OF LAW ............................ 8
     A.  ALJ's Disability Determination ...................... 8
     B.  Objections Raised By Claimant ...................... 11
         1.  Severe Mental Impairment ..................... 11
         2.  Treating Source Opinions ..................... 14
         3.  RFC Assessment ........................... 18

V.   CONCLUSION .................................... 20

VI.  ORDER ......................................... 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 6) filed by Plaintiff Mary Kristine Carpenter on October 17, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Carpenter asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Carpenter requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On January 10, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary

3

outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Carpenter's Education and Employment Background

Carpenter was born in 1967. She did not graduate from high school, but later earned a GED. Her past relevant work includes the following jobs: dishwasher, hand packager, and home health aide. At the time of the administrative hearing, Carpenter was working part-time delivering newspapers. She worked 12 hours or less per week delivering newspapers.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is limited to "light work . . . with some non-exertional limits mainly that the worker can crouch, kneel, and crawl only occasionally; the worker cannot operate any foot controls or foot pedals on the job."[2] The vocational expert responded that under such limitations, Carpenter could perform the following jobs: (1) small products assembler (4,300 positions in Iowa and 227,000 positions in the nation), (2) routing clerk (800 positions in Iowa and 75,000 positions in the nation), and (3) housekeeping cleaner (5,000 positions in Iowa and 377,000 positions in the nation). Next, the ALJ changed the hypothetical to sedentary work instead of light work. Under such circumstances, the vocational expert testified that Carpenter could perform the following jobs: (1) final assembler (600 positions in Iowa and 29,000 positions in the nation), (2) addresser (300 positions in Iowa and 25,000 positions in the

---

[2] Administrative Record at 64.

4

nation), and (3) charge account clerk (400 positions in Iowa and 33,000 positions in the nation).

### C. Carpenter's Medical History

On January 5, 2009, Dr. Laura Griffith, D.O., reviewed Carpenter's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Carpenter. Dr. Griffith determined that Carpenter could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Carpenter could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations. Dr. Griffith noted that:

> [Carpenter] alleges disability on the basis of a knee replacement and depression. [Medical evidence of record] documents a history of obesity and knee surgery in 1/08. At that time she was noted to have antalgic gait due to knee pain. [Degenerative joint disease] of her right knee was diagnosed. When she was seen in 4/08 she had a full [range of motion] in her knee. She was released to as needed follow up as she was moving. No further physical care is documented[.]

(Administrative Record at 423.)

On June 29, 2010, Dr. Myrna Tashner, Ed.D., reviewed Carpenter's medical records and provided DDS with a Psychiatric Review Technique assessment for Carpenter. Dr. Tashner diagnosed Carpenter with mood disorder. Dr. Tashner determined that Carpenter had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Tashner noted that Carpenter's medical records indicate that Carpenter:

> has been followed at her local [mental health clinic]. When last seen in 3/10 she reported doing very well and was being managed with Pristiq. She was delivering papers and had made enough money to buy a car. She was getting along better with her partner. GAF was estimated at 65 and the frequency of follow up visits was extended to 3 months. Mood was described as neutral, even, and nonanxious and affect was congruent with mood. . . .
>
> At this time the mental impairment does not impose significant functional limitations.

(Administrative Record at 523.)

On June 29, 2010, Dr. Jan Hunter, D.O., reviewed Carpenter's medical records and provided DDS with a physical RFC assessment for Carpenter. Dr. Hunter determined that Carpenter could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hunter also determined that Carpenter could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but frequently balance. Dr. Hunter found no manipulative, visual, communicative, or environmental limitations. Dr. Hunter concluded that:

> Allegations are generally credible. Though [Carpenter] likely has continued episodic knee pain, she has not pursued additional treatment and continues to engage in activities requiring considerable standing and walking. She is capable as outlined.

(Administrative Record at 532.)

On January 20, 2011, John Olson, PA, a treating source, filled out a medical opinion form entitled "Ability to do Work-Related Activities," for Carpenter. Olson opined that Carpenter could: (1) frequently lift and carry less than 10 pounds, (2) stand and walk for less than 2 hours in an eight-hour workday, and (3) sit for about 3 hours in

an eight-hour workday. Olson further opined that Carpenter could only sit for 5 minutes before needing to change positions. Similarly, Olson indicated that Carpenter would need to change positions from standing after 10 minutes. Olson also found that Carpenter would need to sometimes lie down at unpredictable intervals during an eight-hour workday. Olson determined that Carpenter should "never" twist, stoop, crouch, climb stairs or ladders, or use foot controls. Olson opined that Carpenter should avoid all exposure to extreme cold and hazards, such as machinery and heights. Olson further indicated that Carpenter should avoid concentrated exposure to extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. Olson stated that Carpenter's limitations were supported by her difficulties with "chronic pain." Lastly, Olson opined that Carpenter would miss more than three days of work per month due to her impairments or treatment for her impairments.

On March 23, 2012, Nicolas Calzada, LMSW, a treating source, filled out a "Mental Medical Source Statement" for Carpenter. Calzada diagnosed Carpenter with mood disorder and dependent personality traits. Calzada assessed Carpenter's GAF at 68-70. Calzada noted that it was "undetermined at the present time" whether Carpenter was a malingerer. Calzada found that Carpenter was limited 10% of an eight-hour workday in her ability to: work in coordination with or proximity to others without being distracted by them, complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, set realistic goals or make plans independently of others, and tolerate normal levels of stress. Additionally, Calzada found that Carpenter's irritability and anger issues could interfere with her ability to sustain competitive employment. Lastly, Calzada opined that Carpenter would miss about 1 day of work per month due to her impairments or treatment for her impairments.

7

On May 11, 2012, Dr. Tim Swinton, M.D., a treating physician, filled out a "Physical Medical Source Statement" for Carpenter. Dr. Swinton found that Carpenter could: (1) frequently lift and carry less than 10 pounds, (2) stand and walk for less than 2 hours in an eight-hour workday, and (3) sit for less than 2 hours in an eight-hour workday. Dr. Swinton further found that Carpenter could sit for 30 minutes before needing to change positions. Similarly, Dr. Swinton determined that Carpenter would need to change positions from standing after 10 minutes. Dr. Swinton also found that Carpenter would need to sometimes lie down at unpredictable intervals during an eight-hour workday. Specifically, Dr. Swinton noted that Carpenter "[l]ays down every afternoon [for] 1 ½ hours [] because she hurts so bad."[3] Dr. Swinton also determined that Carpenter should "never" stoop or crouch, and only "occasionally" twist, climb stairs, and climb ladders. Dr. Swinton further found that Carpenter should avoid concentrated exposure to extreme cold, dusts, and hazards, such as machinery and heights. Dr. Swinton opined that Carpenter's limitations are supported by her history of knee surgery, obesity, and possible back pain.[4] Lastly, Dr. Swinton opined that Carpenter would miss about three days of work per month due to her impairments or treatment for her impairments.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Carpenter is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

---

[3] Administrative Record at 726.

[4] Dr. Swinton noted that he was "unable to get [Carpenter's] back evaluation complete due to lack of insurance." Administrative Record at 726.

8

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Carpenter had not engaged in substantial gainful activity since April 22, 2009.[5] At the second step, the ALJ concluded from the medical evidence that Carpenter has the following severe impairments: obesity and right knee replacement. At the third step, the ALJ found that Carpenter did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Carpenter's RFC as follows:

> [Carpenter] has the residual functional capacity to perform sedentary work . . . except she can crouch, kneel, and crawl only occasionally. She cannot operate foot controls or foot pedals. She requires the freedom to alternate between sitting and standing to maximize comfort and needs to do so every 30 minutes. She can make that change in position in a rapid seamless way such that it would not interfere with productivity at all. She would continue to be able to perform functions even while standing. She requires the freedom to elevate one leg at a time for 15 minutes every hour to a height as high as

---

[5] In his decision, the ALJ noted that Carpenter worked as a dishwasher in 2009 and had been working as a newspaper deliverer since January 2010, but her "work activity did not rise to the level of substantial gainful activity." Administrative Record at 17.

     she wants so long as she can continue to perform all job
     functions.

(Administrative Record at 21-22.) Also at the fourth step, the ALJ determined that Carpenter could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Carpenter could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Carpenter was not disabled.

### B. *Objections Raised By Claimant*

  Overall, Carpenter argues that the ALJ's RFC assessment is flawed. In making this general argument, Carpenter presents two specific arguments that are related to her alleged mental and physical impairments. First, Carpenter argues that by improperly concluding that she does not have a severe mental impairment, the ALJ erred by failing to include any mental limitations in his RFC assessment. Second, Carpenter argues that the ALJ erred by also failing to include all of her physical limitations in his RFC assessment. Specifically, Carpenter maintains that the ALJ failed to properly consider the opinions of her treating sources, Dr. Swinton and John Olson, and include all of their limitations in his RFC assessment. Carpenter concludes that this matter should be remanded for further consideration of her RFC, including limitations based on her mental and physical impairments.

#### 1. *Severe Mental Impairment*

  Carpenter argues that the ALJ erred in his assessment at step 2 of the sequential analysis by failing to find her mood disorder a severe mental impairment. Carpenter maintains that her history of mental health treatment supports a finding that her mood disorder and other mental health problems constitute severe mental impairments. Carpenter concludes that the ALJ's failure to consider her mental health problems as severe impairments at step 2 of the sequential analysis warrants reversal.

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). In other words, if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment. *Id.* (citation omitted). The Eighth Circuit Court of Appeals has stated "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that claimant failed to make this showing." *Id.* at 708 (citations omitted).

In determining that Carpenter's mood disorder is not a severe impairment, the ALJ explained his reasoning for such a finding at great length.[6] First, the ALJ provided a detailed review of Carpenter's mental health treatment from March 2010 to April 2012.[7] The ALJ noted that Carpenter's treatment was conservative, featuring outpatient medication management, routine check-ups, and counseling. The ALJ further noted that Carpenter's GAF scores ranged from 55-75, but were generally in the 65-75 range.[8] The ALJ concluded that "the treatment notes reflect [Carpenter] has done well when taking her

---

[6] *See* Administrative Record at 18-21.

[7] *Id.* at 18-20.

[8] A GAF score is a determination based on a scale of 1 to 100 of a "clinician's judgment of the individual's overall level of functioning." *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000)). According to the DSM-IV, a GAF score of 51-60 supports moderate symptoms or moderate difficulty in social, occupational, or school functioning. A GAF score of 61-70 supports some mild symptoms or some difficulty in social, occupational, or school functioning, but overall the individual functions pretty well. Finally, a GAF score of 71-80 is indicative of transient and expectable reactions to psychosocial stressors, with no more than slight impairment in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* 34 (2000).

12

medications as prescribed."[9] Next, the ALJ thoroughly reviewed the opinions of treating source Nicolas Calzada.[10] The ALJ concluded that the limitations opined by Calzada did "not amount to more than minimal limitation in [Carpenter's] ability to perform basic mental work activities."[11] Lastly, the ALJ concluded that Carpenter's limitations in the areas of activities of daily living, social functioning, and concentration, persistence, and pace were all mild.[12] For example, the ALJ noted that:

> [Carpenter] lives with her spouse, who is disabled. She does household chores, although they take a while, due to physical impairments and resulting functional limitations. She reads. (Testimony) She earlier reported being able to perform personal care although sometimes her husband helped her put on socks and shoes. She prepared meals. She did housework including dishes and laundry. She shopped, although she needed help with carrying groceries. She played cards once a night and read. She worked from January 1, 2009 through June 30, 2009 part-time as a dishwasher. She quit this job, because she moved. Since January 2010, she has been self-employed delivering papers working some 10 to 12 hours a week.

(Administrative Record at 20.) As for social functioning, the ALJ determined that "[m]ental health treatment records reflect some ups and downs in [Carpenter's] relationship with her spouse with it being generally good since at least December 2011. [She] has interacted satisfactorily with others in a work setting, as a dishwasher and later as a self-employed newspaper deliverer who has help from a girlfriend."[13] Finally, with

---

[9] Administrative Record at 20.

[10] See id.

[11] Administrative Record at 20.

[12] Id. at 20-21.

[13] Id. at 21.

13

regard to concentration, persistence, and pace, the ALJ found that Carpenter's "acknowledged activities of daily living include driving, playing cards, reading, and being a self-employed newspaper deliverer. These activities reflect only mild limitation in concentration, persistence or pace."[14] The ALJ concluded that:

> Because [Carpenter's] medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1)).

(Administrative Record at 21.)

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and properly addressed Carpenter's mental health history and treatment for mental health problems. Accordingly, the Court finds that the ALJ's determination at step 2 of the sequential test, that Carpenter's mood disorder is not a severe impairment, is supported by substantial evidence. *See Anderson*, 696 F.3d at 793. Therefore, the Court concludes that Carpenter's argument on this issue is without merit.

### 2. *Treating Source Opinions*

Carpenter argues that the ALJ failed to properly evaluate the opinions of her treating sources. Carpenter argues that the ALJ's reasons for discounting the opinions of her treating sources are not supported by substantial evidence in the record. Carpenter concludes that this matter should be remanded for further consideration of the opinions of her treating sources, especially as those opinions relate to her RFC.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not

---

[14] *Id.*

automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at

848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

With regard to John Olson, Carpenter's treating physician's assistant, the ALJ is afforded more discretion. A physician's assistant is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Olson is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a counselor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any

inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ thoroughly considered and addressed the opinions of Dr. Swinton and Olson.[15] In his decision, the ALJ addressed Dr. Swinton's opinions as follows:

> The undersigned gives significant weight to the opinion of Dr. Swinton. The undersigned has incorporated Dr. Swinton's opinions regarding lifting and carrying, the need to alternate sitting and standing/walking, and the need to change positions after sitting 30 minutes in the residual functional capacity found.
>
> However, the undersigned gives no weight to some of the functional limitation opinions. The limitation [to] avoid concentrated exposure to extreme cold is apparently based on [Carpenter's] statement that she aches with cold especially rather than on any independent objective assessment of the same. Similarly, his opinion [Carpenter] will sometimes need to lie down at unpredictable intervals during a work shift is apparently based on her statement that she lies down every afternoon 1 ½ hours because she "hurts so bad" rather than any independent objective assessment. He would have no evidence that she must lie down during the day other than her statement to him.

(Administrative Record at 24.) With regard to Olson's opinions, the ALJ determined that little weight should be afforded his opinions. Specifically, the ALJ determined that Olson's opinions are "not supported by the limited conservative outpatient management of [Carpenter's] alleged pain with medications."[16]

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Carpenter's treating sources. Also, the Court

---

[15] *See* Administrative Record at 23-24.

[16] *Id.* at 24.

17

finds the ALJ provided "good reasons" for the weight given to the opinions of the treating sources. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. While the ALJ did not include every limitation provided by Dr. Swinton and Olson, the Court bears in mind that "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697. Here, the ALJ included those limitations from Dr. Swinton that were determined to have support in the medical evidence of record. Failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ. *Id.* (citing *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)). Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 3. *RFC Assessment*

Carpenter argues that the ALJ's RFC assessment is flawed. Specifically, Carpenter argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of her functional limitations, both mental and physical. Carpenter maintains that this matter should be remanded for further consideration of her RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at

1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Having reviewed the entire record, the Court finds that the ALJ properly considered Carpenter's medical records, observations of treating physicians, and Carpenter's own description of her limitations in making the ALJ's RFC assessment for Carpenter.[17] *See Lacroix*, 465 F.3d at 887. Moreover, as discussed in section *IV.B.1*, and contrary to Carpenter's assertions, the ALJ properly determined that her mood disorder and mental health problems did not constitute a severe impairment. Similarly, in section *IV.B.2* of this ruling, the Court found that the ALJ properly considered the opinions of Carpenter's treating sources in making his overall disability determination, including determining her RFC. Thus, the Court finds that the ALJ's decision is based on a fully and fairly

---

[17] Administrative Record at 18-24 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

19

developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Carpenter's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

## V. CONCLUSION

The Court finds that the ALJ's determination at step 2 of the sequential test is supported by substantial evidence. Furthermore, the Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Carpenter's treating sources. Additionally, the Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 6) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 10th day of October, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA